UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PATRICIA COOK-BELL,            ) | |
|                     ) | |
|       Plaintiff,            ) | |
|                     ) | CIVIL ACTION NO. |
| VS.            ) | |
|                     ) | 3:11-CV-3258-G |
| MORTGAGE ELECTRONIC            ) | |
| REGISTRATION SYSTEMS, INC.,            ) | |
| ET AL.,            ) | |
|                     ) | |
|       Defendants.            ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the defendants' motions to dismiss (docket entries 24, 26). For the reasons stated below, the defendants' motions to dismiss are granted.

### I. BACKGROUND

#### A. Factual Background

This is a home mortgage case. The plaintiff is Patricia Cook-Bell ("Cook-Bell"), a homeowner. Plaintiff's Second Amended Complaint ("Complaint") ¶ 1 (docket entry 34). The defendants are Quicken Loans, Inc. ("Quicken"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and IndyMac IMSC Mortgage Loan

Trust 2007-HOA1 Issuing Entity Mortgage Pass-Through Certificates Series 2007-HOA1 ("IndyMac trust")[1]. *Id*. ¶¶ 2, 5-6.

In February 2007, Cook-Bell applied for a residential mortgage from Quicken. *Id.* ¶ 9. At that time, the loan officer offered Cook-Bell an "interest-only" loan based on a negative amortization approach, in which her minimum payments were less than the interest that accrued on the loan. *Id.* ¶¶ 9-10. The loan officer allegedly did not inform Cook-Bell of other types of loans and assured her that the interest-only loan was her only option. *Id.* ¶ 10. Furthermore, he made her believe that the new monthly payment was not going to be more than the payments she made prior to refinancing. *Id*.

During the application process, Cook-Bell was given a good faith estimate that showed her proposed interest rate ranging from 6.75% to 11.75%. *Id.* ¶ 9. However,

---

[1] The plaintiff's second amended complaint, which is the currently operative complaint, lists three defendants in this case in addition to Quicken and MERS: (1) IndyMac Bank, (2) IndyMac MBS Inc., and (3) IndyMac trust. Complaint ¶¶ 3-5. In contrast, the plaintiff's first amended complaint listed (1) Netco, Inc., (2) IndyMac Mortgage Services, and (3) "unknown trust" as defendants. Plaintiff's First Amended Petition ("First Amended Complaint") ¶¶ 4-6 (docket entry 16). According to one of the motions to dismiss, OneWest Bank, FSB ("OneWest") is the proper name for IndyMac Mortgage Services. Supplement to Motion to Dismiss ("MERS' Motion Supplement") at 1 (docket entry 37). OneWest and IndyMac trust have filed a motion to dismiss in this case, *id.* at 1, as has Netco, Defendant Netco, Inc.'s Motion to Dismiss (docket entry 22). Because OneWest and Netco were not listed among the defendants in the second amended complaint, their motions to dismiss are **DENIED** as moot. IndyMac Bank and IndyMac MBS Inc. have not been served/filed an answer/filed a motion to dismiss.

Quicken utilized the "stated income method" to calculate her true interest rate. *Id.* ¶ 11. Cook-Bell provided various records and statements to the loan officer to corroborate her stated income amount. *Id.* Nevertheless, the Client Information Summary and the Loan Disclosure Summary stated that Cook-Bell made $4,500 and $5,300 per month, respectively. *Id.* These summaries overstated Cook-Bell's income by about 50%. *Id.* ¶ 14.

Upon completing the refinancing process, Quicken sent a notary public to Cook-Bell's house on April 9, 2007, to complete and notarize the closing documents. *Id.* ¶ 12. The notary refused to answer Cook-Bell's questions about her loan, and told her to address all questions to the loan officer. *Id.* Cook-Bell nevertheless signed the closing documents on April 9, 2007. *Id.* She then called the loan officer, who also refused to answer questions about her loan. *Id.* Because the summaries overstated her income, Cook-Bell's rate and terms of her loan were "substantially higher" than what she qualified for at the time. *Id.* ¶ 18. Cook-Bell further believes that Quicken contracted with and coerced her into using a real estate appraiser who gave an inflated appraisal of the property. *Id.* ¶¶ 15-16. Cook-Bell also alleges that the loan officer guaranteed "that [Cook-Bell's] closing cost[s] would be very minimal," but that the plaintiff was overcharged at closing "by inflation of the discount points." *Id.* ¶ 13. Cook-Bell is currently on the verge of losing her home. *Id.* ¶ 25.

Cook-Bell alleges that after closing, Quicken transferred the note to "defendant Indy,"[2] and that the note is now held by IndyMac trust. *Id.* ¶¶ 17, 21. In addition, Cook-Bell alleges that after closing, the deed of trust was assigned to MERS. *Id.* ¶ 19.

### B. Procedural Background

On October 19, 2011, Cook-Bell filed this suit in a Texas state court. Defendants' Notice of Removal ("Notice of Removal") ¶ 1 (docket entry 1). On November 23, 2011, the defendants timely removed the case to this court on the basis of diversity and federal question jurisdiction under 28 U.S.C. §§ 1331 and 1332. *Id*. ¶¶ 4-21.

On March 26, 2012, the plaintiff filed her second amended complaint. *See* Complaint. First, the plaintiff's complaint alleges claims of (1) common law fraud, (2) fraud in the inducement, (3) fraud by non-disclosure, (4) unfair debt collection practices, and (5) a suit to quiet title. *Id*. ¶¶ 34-50. Second, the plaintiff alleges "conspiracy to commit fraud in the inducement, unfair debt collection practices act, common law fraud, fraud by non-disclosure, unconscionable contract and/or violations of [Texas Civil Practice and Remedies Code] 12.002." *Id*. ¶ 51. Third, the plaintiff asserts the "defenses" of (1) unconscionable contract, (2) fraud in the inducement, (3) illegality of contract, (4) unclean hands, (5) off-set, and (6) statute of frauds. *Id*. ¶¶ 52-62. Fourth, the plaintiff seeks a declaratory judgment. *Id*. ¶¶ 63-

---

[2] It is unclear whether "Indy" refers to IndyMac Bank, IndyMac MBS Inc., or IndyMac trust.

65. Finally, the plaintiff's complaint contains a long narrative of "the history of securitization and predator[y] lending," which the plaintiff argues also asserts a claim for relief. *Id.* ¶¶ 22-29.

Quicken, MERS, and IndyMac trust have filed motions to dismiss for failure to state a claim upon which relief can be granted. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 1949. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" her claims against the defendants "across the line from conceivable to plausible." See *id.* at 1950, 1952.

## II. ANALYSIS

### A. Fraud Claims

The plaintiff has pled claims of common law fraud, fraud in the inducement, and fraud by non-disclosure against the defendants. In Texas, the statute of limitations for fraud is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Fraud claims accrue on the discovery of the fraud or at such time as the fraud might reasonably have been discovered through the exercise of reasonable diligence. *Carroll v. Jaques*, 927 F. Supp. 216, 223 (E.D. Tex. 1996) (citing *McMeens v. Pease*, 878 S.W.2d 185, 188 (Tex. App.--Corpus Christi 1994, writ denied)).

The discovery rule, however, operates as an exception to the statute of limitations, wherein the plaintiff must plead and prove that the nature of the injury was inherently undiscoverable and objectively verifiable for the rule to apply. *TIG Insurance Company v. Aon Re, Inc.*, 521 F.3d 351, 358 (5th Cir. 2008). The rule works to suspend the accrual of a cause of action until a plaintiff knows, or in the exercise of reasonable diligence should have known, of the facts giving rise to the claim. *Jackson v. West Telemarketing Corporation Outbound*, 245 F.3d 518, 524 (5th Cir.), *cert. denied*, 534 U.S. 972 (2001); *Boundy v. Dolenz*, No. 3:96-CV-3010-G, 2002 WL 31415998, at *6 (N.D. Tex. Oct. 21, 2002) (Fish, C.J.), *aff'd*, 87 Fed. Appx. 992 (5th Cir.), *cert. denied*, 543 U.S. 897 (2004). "Knowledge of facts which would have excited inquiry into the mind of a reasonably prudent person, which, if pursued by him with

reasonable diligence, would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law." *McMeens*, 878 S.W.2d at 188.

In this case, all of the facts that the plaintiff alleges support claims for common law fraud, fraud in the inducement, and fraud by non-disclosure occurred at or around the date of the closing on the loan. Because Cook-Bell closed on her loan on April 9, 2007, the four-year statute of limitations expired on April 9, 2011. And since this case was filed in October of 2011, the plaintiff's fraud claims are barred by limitations. Moreover, there are no grounds to either delay the accrual of or toll the statute of limitations. With reasonable diligence, Cook-Bell should have discovered any possible fraud at, or shortly after, the time of the closing. Moreover, there was nothing "inherently undiscoverable" about the problems that Cook-Bell allegedly had with her loan. As a result, the statute of limitations has run on the plaintiff's fraud claims, and those claims are time-barred.

B.  Conspiracy Claims

The plaintiff alleges conspiracy claims for "fraud in the inducement, unfair debt collection practices act, common law fraud, fraud by non-disclosure, unconscionable contract and/or violations of [Texas Civil Practice and Remedies Code] 12.002." Complaint ¶ 51. Civil conspiracy claims are subject to a two-year statute of limitations under Texas Civil Practice and Remedies Code § 16.003. *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719 (Tex. App.--Houston [14th

Dist.] 2010, no pet.). "[U]nder civil conspiracy, each continued invasion of the plaintiff's interest causing loss and damage in a conspiracy case is treated as an independent element for limitations purposes and the two year statute of limitations begins to run when each independent element arises." *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 822 (Tex. App.--Corpus Christi 1988, writ denied).

Plaintiff premises her conspiracy claim upon the alleged fraudulent activities regarding her loan closing on April 9, 2007. Because all relevant actions happened on or around April 9, 2007, the statute of limitations for conspiracy ended on or around April 9, 2009. Thus, plaintiff's conspiracy claim is barred by the statute of limitations.

### C. Unfair Debt Collection Practices Act

The plaintiff also alleges violations of both federal and state unfair debt collection practices laws. The Fair Debt Collection Practices Act ("FDCPA") is a federal statute that "makes it unlawful for debt collectors to use abusive tactics while collecting debts for others." *Perry v. Stewart Title Company*, 756 F.2d 1197, 1208 (5th Cir. 1985). The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Texas Debt Collection Practices Act ("TDCPA") prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a

consumer debt." TEX. FIN. CODE ANN. § 392.304(a)(8). The TDCPA further prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* § 392.304(a)(19).

In her complaint, the plaintiff argues that "[b]ecause the loan was procured by fraudulent and/or predatory and/or unconscionable means, Defendants' collection on the loan constitutes unfair debt collection as the debt itself was incurred through unfair and overreaching tactics by the precise players attempting to collect on that debt." Complaint ¶ 48. However, the plaintiff does not appear to allege any actual unfair or inappropriate "debt collection practices." Instead, the only "fraudulent and/or predatory and/or unconscionable" facts alleged in the plaintiff's complaint deal with how the loan was "procured." As a result, the plaintiff's claims under both the FDCPA and the TDCPA fail.

### D. Action to Quiet Title

Under Texas law, the elements of a cause of action to quiet title are: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at * 4 (N.D. Tex. May 21, 2012) (Lindsay, J.) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.-- Texarkana 1991, writ denied)). Texas courts have made clear that "a necessary

prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note." *Fillion v. David Silvers Company*, 709 S.W.2d 240, 246 (Tex. App.-- Houston [14th Dist.] 1986, writ ref'd n.r.e.).  Furthermore, the plaintiff has the burden of establishing her "superior equity and right to relief," relying on the strength of her own title, not the inferiority of the defendants' title.  See *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.--Houston [1st Dist.] 2009, pet. denied).

The plaintiff asserts only that "if the lien were enforced, it would interfere with the [p]laintiff's . . . use and enjoyment of the property."  Complaint ¶ 50.  However, the plaintiff has failed to argue that her title is superior to the defendants' title, and has not tendered the amount owed on the note.  See *id.*  As a result, the plaintiff has failed to state a claim upon which relief may be granted, and this claim too must be dismissed.

E.   Securitization Claims and Defenses

As the plaintiff admits, the defendants' motions to dismiss have "address[ed] the causes of action in Plaintiff's Second Amended Petition and [have] discredit[ed] each." Plaintiff's Response to Defendant Quicken Loans, Inc.'s Motion to Dismiss ("Response to Quicken's Motion") ¶ 15 (docket entry 43); Plaintiff's Response to Defendant MERS, Inc., Onewest, and Indymac IMSC Mortgage Loan Trust 2007- HOA1 Issuing Entity Mortgage Pass Through Certificate Series 2007-HOA1's Motion to Dismiss ("Response to MERS and OneWest's Motion") ¶ 15 (docket entry

44). Instead, the plaintiff urges the court to look at her complaint's section entitled "History of Securitization and Predatory Lending," Complaint ¶¶ 22-29, as well as the complaint's "defenses," *id*. ¶¶ 52-62.

The plaintiff's "History of Securitization and Predator[y] Lending" is a long narrative that explores the connection between mortgage-backed securities, predatory lending practices, and the recent financial crisis. This section of the plaintiff's complaint fails to state any claim at all within the meaning of Rule 12(b)(6). *See also* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). The story of the financial crisis is not a cause of action.

The complaint also lists a series of defenses, including unconscionable contract, fraud in the inducement, illegality of contract, unclean hands, off-set, and statute of frauds. These defenses are not claims upon which relief can be granted, so they also fail under Rule 12(b)(6).

### III. CONCLUSION

For the reasons stated above, the defendants' motions to dismiss are **GRANTED**. Judgment will be entered for the defendants.

**SO ORDERED**.

June 15, 2012.

/s/ A. Joe Fish
**A. JOE FISH**
**Senior United States District Judge**